**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

REJESTA JONES,                 )
          Plaintiff,         )
                            )
v.                           )       Case No:
                            )
TRIAD SENIOR LIVING, INC.,     )       **JURY DEMANDED**
and                          )
DON REDMOND,            )
          Defendants.      )

## COMPLAINT AT LAW

NOW COMES the Plaintiff, Rejesta Jones ("Jones" or "Plaintiff"), by and through her undersigned attorneys, and for her Complaint at Law against the Defendants, Triad Senior Living Inc., ("Triad") and Don Redmond ("Redmond") (collectively, "Defendants"), states as follows:

## NATURE OF THE CASE

1.     That Counts I, II, III arise under Title VII of the Civil Rights Act 42 U.S.C. § 2000e as amended, 28 U.S.C. § 1331, 28 U.S.C. § 1367 ("Title VII").

2.     That Count IV is brought against both Defendants, under the Illinois Gender Violence Act, 740 ILCS 82/*et seq.* and Illinois common law.

3.     That Count V and VI arise under Illinois common law.

## JURISDICTION AND VENUE

4.     That this court has jurisdiction over this matter based upon 42 U.S.C. § 2000e, 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

5.     That venue in the Northern District of Illinois is proper. The claims for relief arose in Chicago, Cook County, Illinois, as required by 42 U.S.C. § 2000e.

6.      That all conditions precedent have been fulfilled by Plaintiff, including the filing of a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). Charge Number 21BA01144 is attached hereto and incorporated herein as Exhibit A.

7.      Jones has received the requisite Notice of Right to Sue letter from the EEOC dated December 10, 2018 (Exhibit X), thus entitling her to bring this action in the Federal Court of the Northern District of Illinois.

## PARTIES

8.      Jones is female and a resident of Cook County, Illinois.

9.      Triad Senior Living, Inc., is duly registered to conduct business in the state of Illinois.

10.     At the time of the incidents claimed herein, Defendant Triad was an "Employer" within the meaning of Title VII of the Civil Rights Act.

11.     At all times pertinent hereto, Defendant Triad has engaged in an industry affecting commerce and has had fifteen (15) or more employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year.

12.     That at all times pertinent herein, Jones was employed by Triad.

13.     Plaintiff was hired by Triad in November 2019 as a Cook and worked at Triad Senior Living Inc., located at 17400 Kedzie Ave., Hazel Crest, Illinois.

14.     That at all times pertinent herein, Redmond was employed by Triad.

15.     That at all times pertinent herein, Redmond was a male and a resident of Illinois.

16.     That at all times pertinent herein, Redmond was a supervisor to Jones.

17.    That Redmond had trained Jones for the position she was employed in at Triad.

18.    That at all times, Redmond was employed by Triad as a Kitchen Director located at 17400

       Kedzie Ave., Hazel Crest, Illinois.

19.    Redmond trained Jones at the time that she was hired at Triad.

20.    Jones was a Cook who prepared meals and cleaned the cooking area.

21.    Triad and Redmond provided instructions to Jones on how to perform her duties.

22.    Triad and Redmond provided the location for Jones to perform her duties.

23.    Triad and Redmond provided Jones with the tools to perform her duties.

## Count I

## Sexual Harassment against Defendant Triad

24.    Jones incorporates the preceding and subsequent paragraphs by reference herein.

25.    That during her employment, Jones performed her assigned tasks in a satisfactory and

       conscientious manner.

26.    That on or about November 4, 2019, Jones was hired by Triad to be a Cook.

27.    That beginning approximately November 4, 2019, and through the entire duration of her

       employment, Jones was subjected to persistent unwelcome sexual advances, sexual

       comments and other physical and verbal conduct of a sexual nature from Redmond and

       others, based on her sex, female.

28.    That on Jones' third shift with Triad, co-worker Reginald Last Name Unknown ("LNU")

       made unwelcome, sexual and offensive contact with Jones.

29. That while Jones was organizing a cooler, Reginald approached the cooler to get cheese or an onion from cooler.

30. That while Reginald was reaching into the cooler for the supplies, he suddenly took advantage of his close proximity to Jones to massage Jones' thigh in a sensual manner.

31. That this unwelcome thigh massage made Jones feel uncomfortable, fearful, and humiliated.

32. That Jones immediately told Reginald that such contact is unwelcome and should not be repeated.

33. That Jones immediately reported this incident to Jones' supervisor, Assistant Manager Denise LNU.

34. That Defendants failed to take effective and appropriate remedial action after Jones reported Reginald's conduct to Assistant Manager Denise LNU.

35. That beginning on her first shift on November 4, 2019, Jones' supervisor, Kitchen Director Don Redmond, would approach Jones from behind to forcibly and unexpectedly make a sexual embrace with Jones from which she could not break free.

36. That Redmond referred to these frequent predatory trappings as "hugs."

37. That these "hugs" would come as a surprise to Jones because Redmond would approach Jones from behind where she could not see him approaching, nor could she escape.

38. That these "hugs" were often given from behind and Redmond would repeatedly press his genitals against Jones.

39.    That during these "hugs" Redmond would wrap his arms around Jones' body and constrict in order to trap and make prolonged contact with her breasts and buttocks.

40.    That while trapped in these "hugs" Redmond would press his genitals on Jones' buttocks.

41.    That Jones actually felt Redmond's genitals pressed upon her buttocks.

42.    That these "hugs" were extremely tight which caused Jones to be unable to escape.

43.    That Redmond gave these unexpected and predatory hugs on a daily basis.

44.    That Jones explained to Redmond that these "hugs" were unwelcome and that Jones would prefer a high five or fist bump.

45.    That in response to this complaint from Jones, Redmond declined to change his behavior, sexually looked Jones up and down and responded, "I get my hugs every day."

46.    That Jones felt very uncomfortable, fearful, and humiliated while Redmond was looking Jones up and down in this way.

47.    That Redmond's refusal to change his behavior forced Jones into hiding at her own workplace by trying to avoid Redmond entirely in order to avoid these painful and humiliating interactions with Redmond.

48.    That despite Jones' attempts to avoid Redmond and these repeated non-consensual embraces, Redmond would still demand, and actually take "hugs" from Jones.

49.    That on November 26, 2019, Redmond approached Jones and said "You know you owe me, right? I get my hugs every day. You owe me."

50.    That in an attempt to avoid a yet another humiliating exchange, Jones responded to Redmond's comment by telling Redmond to go home and hug his wife.

51.     That Redmond responded by aggressively grabbing his genitals to intimidate and proposition Jones.

52.     That Redmond further responded "I can't wait that long but she know when I get home she get this dick. She know when I get on top and fuck her real good she call me daddy."

53.     That this event made Jones feel uncomfortable, frightened, and humiliated.

54.     That immediately after this incident, Plaintiff reported Redmond's conduct to Assistant Manager Denise LNU.

55.     That Denise responded "[Redmond] is like a father to me. We all talk dirty here and curse. Don't take it personally."

56.     That Denise declined to take preventative and corrective measures in response to this request from Jones for relief.

57.     That despite this resistance from management, Jones pleaded to Denise that Redmond and others were sexually harassing her.

58.     That Jones then asked Denise for guidance, advice, and direction on how to prevent and correct the sexually harassing behavior and how to reform her experience in this hostile work environment.

59.     That Denise again declined to assist Jones by responding to her pleas for help by saying "We [management] are like family" and that upper management would not do anything to address a sexual harassment complaint.

60.     That Denise then referred Jones to Equal Employment Opportunity Commission.

61.   That by simply referring Jones to the EEOC and failing to address Jones' complaints at all, Denise exhibited supervisory inaction, negligence, and indifference.

62.   That Denise's reference to the EEOC shows how unlikely it is that Defendant Triad would do anything to assist Jones.

63.   That Defendants failed to take effective and appropriate remedial action after Jones reported Redmond's conduct to Denise.

64.   That as a result, Redmond continued his conduct and extended his reign of harassment to Jones and other females under his supervision.

65.   That Jones observed Redmond sexually harassing other female co-workers.

66.   That, for example, typically Redmond did not tie the strings on his apron around his waist. Instead, he let the apron hang from his neck and the strings hang loose on the sides.

67.   That using these loose apron strings, Redmond would slap the buttocks of female coworkers.

68.   That on one occasion in November 2019, Jones observed Redmond "hug" a coworker, Monica LNU.

69.   That in response to that hug, Monica told Redmond "I shouldn't be hugging you like that because my husband wouldn't like it."

70.   That Defendants failed to take effective and appropriate remedial action in response to Monica complaining to Redmond of sexual harassment.

71.   That as a result, Redmond continued his conduct and extended his reign of harassment, discrimination, and intimidation.

72. That as a further result of Defendant's inaction, Redmond continued his campaign of harassment and intimidation of several female employees under his supervision on a daily basis.

73. That on another occasion, Jones heard Redmond address a female coworker as "fat ass."

74. That Redmond did not address similarly situated male employees this way.

75. That after Jones made clear that she would not be coalescing and submitting to all of Redmond's advances and propositions, Redmond became increasingly hostile.

76. That after Jones complained of sexual harassment to Denise, Redmond became increasingly hostile.

77. That Redmond constantly criticized Jones' work, which Redmond had not criticized before.

78. He began to give Jones additional cleaning work, which made it difficult to complete all of her tasks during her shift.

79. That Redmond forced Jones to re-make orders that he used to find satisfactory.

80. That during Jones' shift on December 4, 2019, Redmond verbally and physically attacked her.

81. That on December 4, 2019, Redmond walked up to Jones and aggressively handed her the large stack of order tickets (individual food items to be made) that Redmond was himself responsible for.

82. That Redmond then began yelling at Jones.

83.    That Redmond yelled "Stop with the silent bullshit! You need to do your job! Grow up and act like fucking woman!"

84.    That this statement shows sexist animus.

85.    That Redmond was standing so closely to Jones that she could feel him breathing on her.

86.    That Jones felt extremely fearful and humiliated.

87.    That Jones perceived Redmond to be so irate and angry that she feared Redmond would physically strike her.

88.    That Jones told Redmond to back up and asked Redmond why he was being disrespectful.

89.    That Redmond yelled "You need to act like fucking adult!"

90.    That Jones responded, "I'm just trying to do my job."

91.    That Redmond responded "I don't need your ass! Clock out! You're done!"

92.    That Jones became increasingly fearful and embarrassed.

93.    That Redmond continued to attack Jones and said "Your ass is done at 6! Don't come back! You're done!"

94.    That Jones was never again scheduled for a shift.

95.    That Redmond's statement constituted a termination of Jones' employment at Triad.

96.    That the termination of Jones' employment constitutes an adverse employment action.

97.    That Defendant's officers and agents must also have been aware of this ongoing sexual harassment by Redmond of his female subordinates because it occurred on a daily basis in an open and notorious manner such that it is observed by employees and supervisors alike.

98.     That Defendants condoned sexual harassment and failed to maintain a harassment-free work environment by failing to employ an effective anti-sexual harassment policy with respect to its employees and agents, especially Redmond.

99.     That Defendants failed to maintain a harassment-free work environment by failing to take effective corrective action against Redmond after they became aware that he was making unwelcome sexual advances and touching toward women who worked for him and harassing them on an ongoing basis.

100.    That as a result of these failures by Defendants, Redmond continued to use his authority as supervisor to force his unwelcome sexual advances, offensive conduct and harassment on Jones and several other subordinate females on an ongoing basis.

101.    That the sex discrimination and sexual harassment that Jones was subjected to at the hands of Defendants, their agents, representatives and employees was persistent in nature, unwelcome, offensive, humiliating and had the effect of creating a hostile and intimidating work environment for Redmond.

102.    That said continuous and persistent sex discrimination and sexual harassment adversely affected the terms and conditions of Jones' employment with Defendant.

103.    That as an actual and proximate result of unlawful employment practices Jones has lost and will continue to lose substantial income, including but not limited to wages, seniority benefits and other employment benefits that are due to her.

104.    That as a further actual and proximate result of said unlawful employment practices, Jones has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself and her children, harm to employability and earning capacity,

10

painful embarrassment among her friends and co-workers, damage to her reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of life.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to provide the following equitable and legal remedies:

a. Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b. Order a permanent injunction prohibiting Defendant from further acts of sexual harassment and discrimination.

c. Award Plaintiff costs of litigation, including reasonable attorney's fees and expert fees and expenses.

d. Award Plaintiff a judgment against Defendant for reinstatement, front pay, back pay and other compensatory damages.

e. Award Plaintiff prejudgment interest.

f. Grant judgment against Defendant for punitive damages as permitted by law, for willful and wanton conduct.

g. Enter an order requiring Defendant to implement effective steps to eliminate sexual harassment and discrimination from Defendants' workplace.

h. Grant such other and further relief as this Court deems just and proper.

## Count II
## Sexual Discrimination against Defendant Triad

105. Jones incorporates the preceding and subsequent paragraphs by reference herein.

106. That Jones' sex is female.

107. That Jones' job performance met Defendant's legitimate expectations.

108. That from November 4, 2019, continuing until December 4, 2019, Jones was subjected to unwelcome sexual advances, sexual comments and other physical and verbal conduct of a sexual nature from Triad's employees, especially Redmond, based on her sex, female.

109. That Jones repeatedly rejected Redmond's sexual advances and harassment.

110. That Redmond did not make unwelcome sexual advances, sexual comments and other physical and verbal conduct of a sexual nature to male employees similarly situated to Jones.

111. That Redmond and others committed these acts because Jones is female.

112. That in November 2019, Jones repeatedly reported the unwelcome sexual comments and other physical and verbal conduct of sexual nature to Triad's supervisors.

113. That in November 2019, Jones' Supervisor Denise LNU declined to prevent nor correct the harassing behavior of Redmond by saying "[Redmond] is like a father to me. We all talk dirty here and curse. Don't take it personally."

114. That in November 2019, Denise told Jones that "We [management] are like family" and upper management will not do anything to address your sexual harassment complaints.

115. That Denise then referred Jones to Equal Employment Opportunity Commission.

116. That Denise's reference to the EEOC shows how unlikely it is that Defendant Triad would do anything to assist Jones.

117. That this EEOC statement shows how unlikely it is that Defendant Triad would do anything to assist Jones.

118. That on December 4, 2019, Redmond walked up to Jones and aggressively handed her the large stack of order tickets (individual food items to be made) that Redmond was himself responsible for.

119. That Redmond then began yelling at Jones.

120.   That Redmond yelled "Stop with the silent bullshit! You need to do your job! Grow up and act like fucking woman!"

121.   That this statement shows sexist animus.

122.   That Redmond did not harass nor terminate the employment of similarly situated male employees.

123.   That Jones found the harassment to which she was subjected, as a result of Redmond's conduct and Triad at large, extremely offensive.

124.   The offensive conduct created an objectively hostile and intimidating work environment for Jones.

125.   This offensive and retaliatory conduct adversely affected the terms and conditions of Jones' employment with Defendant Triad.

126.   That Triad and its agents, representatives, and employees condoned the sexual harassment of Jones and failed to maintain a discrimination-free work environment, and as a result, Redmond continuously and regularly forced unwelcome sexual advances and offensive conduct upon Jones.

127.   That Triad failed to maintain a discrimination-free work environment by failing to employ an effective anti-discrimination policy with respect to their employees and officers.

128.   As a direct result of these failures by Triad, Redmond continued to discriminate and engage in otherwise offensive conduct toward Jones.

129.   That Triad's treatment of Plaintiff was motivated by sexist intent, and Triad was indifferent to Jones' complaints because her sex is female.

130.    That Triad and its supervisors did not engage in the aforesaid conduct against similarly situated male employees.

131.    That Triad and its employees discriminated against Jones due to her sex, female.

132.    That the sex discrimination that Jones was subjected to at the hands of Triad and its employees, was persistent in nature, unwelcome, extremely offensive, humiliating, and effective in creating a hostile work environment for Jones.

133.    That as a further and direct and proximate result of said unlawful employment practices, Jones has suffered the indignity of discrimination and harassment, the invasion of the right to be free from discrimination and harassment, and great emotional distress on the relationships between Jones and her friends and colleagues.

134.    As a further direct and proximate result of said unlaw practices, Jones has suffered extreme mental anguish, outrage, severe anxiety, shameful embarrassment among her friends, colleagues, and coworkers, due to her reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasure of life.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court to provide the following equitable and legal remedies:

a.  Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b.  Order a permanent injunction prohibiting Defendant from further acts of sexual harassment and discrimination.

c.  Award Plaintiff costs of litigation, including reasonable attorney's fees and expert fees and expenses.

d.  Award Plaintiff a judgment against Defendant for reinstatement, front pay, back pay and other compensatory damages.

e.  Award Plaintiff prejudgment interest.

f. Grant judgment against Defendant for punitive damages as permitted by law, for willful and wanton conduct.

g. Enter an order requiring Defendant to implement effective steps to eliminate sexual harassment and discrimination from Defendants' workplace.

h. Grant such other and further relief as this Court deems just and proper.

## Count III
## Retaliation against Defendant Triad

135. That Jones incorporates the preceding and subsequent paragraphs by reference herein.

136. That Jones' job performance met Defendant's legitimate expectations.

137. That beginning in November 2019 until being terminated in December 2019, Jones was subjected to sexual harassment and discrimination at the hands of Triad and Triad's agents, representatives, and employees, especially Don Redmond.

138. That Jones repeatedly opposed the aforesaid harassment and discrimination from Triad's employees.

139. That Jones opposed Redmond's sexual advances and harassment, and Jones engaged in protected activity by opposing sexual harassment and discrimination from Redmond and others.

140. That in November 2019, Jones reported the sexual harassment and discrimination that she suffered to her supervisor, Assistant Manager Denise LNU.

141. That in November 2019 Jones complained to Denise about the unwelcome sexual advances, sexual comments, and other physical and verbal conduct of sexual nature that she had been suffering at the hands of other Triad employees.

142. That Denise responded "[Redmond] is like a father to me. We all talk dirty here and curse. Don't take it personally."

143. That Jones then insisted to Assistant Manager Denise LNU that she was suffering sexual harassment from Redmond and Reginald.

144. That Denise responded "We [management] are like family" and upper management will not do anything to address your sexual harassment complaint.

145. That Denise then referred Jones to the Equal Employment Opportunity Commission.

146. That Denise's reference to the EEOC shows how unlikely it is that Defendant Triad would do anything to assist Jones.

147. That Jones' aforesaid actions constitute protected activities.

148. That after Jones declined Redmond's propositions and sought to end his harassing behavior, Redmond began to retaliate against her.

149. That after Jones reported Redmond's and Reginald's behavior to Denise, Redmond began to retaliate against her.

150. That shortly after Jones reported Redmond's and Reginald's behavior to Denise, Redmond subjected Jones to unwarranted and invalid discipline, assigned undesirable job assignments, verbally berated Jones and intentionally physically intimidated her.

151. That Redmond assigned Jones additional busy work, such as more cleaning work, which made it difficult for Jones to complete all of her tasks during the shift.

152. That Redmond forced Jones to re-make orders that had always been satisfactory because Redmond suddenly no longer found them to be satisfactory.

153. That after Jones declined Redmond's sexual advances and propositions, Redmond became increasingly hostile, volatile, and vindictive.

154. That after Jones reported Redmond and Reginald's conduct to Denise, Redmond became increasingly hostile, volatile, and vindictive.

155. That during Jones' shift on December 4, 2019, Redmond verbally attacked her.

156. That on December 4, 2019, Redmond walked up to Jones and aggressively handed her the large stack of order tickets (individual food items to be made) that Redmond was himself responsible for.

157. That Redmond then began yelling at Jones.

158. That Redmond yelled "Stop with the silent bullshit! You need to do your job! Grow up and act like fucking woman!"

159. That Redmond was standing so closely to Jones that she could feel him breathing on her.

160. That Jones felt extremely fearful and humiliated.

161. That Jones perceived Redmond to be so irate and angry that she feared Redmond would physically strike her.

162. That Jones told Redmond to back up and asked Redmond why he was being so disrespectful.

163. That Redmond yelled "You need to act like fucking adult!"

164. That Jones responded, "I'm just trying to do my job."

165. That Redmond responded "I don't need you ass! Clock out! You're done!"

166. That Jones became increasingly fearful and embarrassed.

167. That Redmond continued to attack Jones and said "Your ass is done at 6! Don't come back! You're done!"

168.    That after this shift on December 4, 2019, Jones was never again scheduled for a shift.

169.    That Redmond's statement constituted a termination of Jones' employment at Triad.

170.    That this termination constitutes an adverse employment action.

171.    That Jones left the workplace on December 4, 2019, between 6:20pm and 6:30pm.

172.    That the next two days, December 5 and 6, 2019, were Jones' scheduled off days.

173.    That during these two days, Jones tried contacting Jana Paez, Facility Manager, to report Mr. Redmond's conduct and to ask Jana Paez to investigate Redmond's conduct and the incident of December 4, 2019.

174.    That Jones called Paez, but Paez never answered nor returned Jones' call.

175.    That Jones also emailed Paez to ask to investigate Redmond's conduct and the incident of December 4, 2019.

176.    That Jones told Paez she was very scared to return to work because of the hostile work environment, especially Redmond.

177.    That Paez responded approximately two weeks later, on December 20, 2019, to offer no assistance or opportunities to resolve the issue.

178.    That Paez responded by acknowledging and verifying that Redmond had in fact addressed a female coworker as "fat ass."

179.    That Paez responded by acknowledging and verifying that communication of nature is normal and to be expected in the workplace because "joking with one another happens in the kitchens sometimes."

180. That Paez's email acknowledged and condoned Redmond's angry and verbally violent outburst by saying "[Redmond] has this right in his role as Food Service Director."

181. That despite Jones' repeated complaints and communications, Paez did not find evidence of Redmond's harassing behavior.

182. That on or approximately December 5, 2019, Jones had still not heard back from Paez prompting her to reach out to Triad's CEO, Brian LNU.

183. That Brian said he would investigate the complaint.

184. That on December 20 or 21, 2019 Jones called Brian again to ask about the investigation.

185. That Brian told Jones that "Well, you said you don't feel safe [at Triad]. I don't have another place to put you."

186. That Jones responded "You don't have another facility? I need work to support my four children."

187. That Brian responded "People always do things for money. We wish you the best of luck."

188. That Jones was never again scheduled to work a shift for Triad.

189. That Redmond's statement on December 4, 2019, constitutes a termination of Jones' employment at Triad.

190. That Jones' phone call with Brian constitutes a termination of her employment at Triad.

191. That Triad's actions as stated herein and subject to further investigation are adverse employment actions taken against Jones.

192. That the aforesaid conduct by Triad and Redmond against Jones amount to retaliation in violation of the law.

19

193.   That similarly situated employees of Triad who did not complain about sexual harassment and sex discrimination were treated more favorably than Jones.

194.   That an inference of retaliatory motive is raised due to the fact that Jones' stated opposition to sexual harassment and sex discrimination and Triad's retaliatory actions took place in such a short period of time.

195.   That Triad's retaliation against Jones adversely affected the terms and conditions of Jones' employment with Triad.

196.   That as a direct and proximate result of said unlawful employment practices, Jones has suffered the indignity of discrimination, harassment, retaliation, the invasion of the right to be free from discrimination and harassment, and great humiliation in emotional distress on the relationships between Jones and her friends, family, and colleagues.

197.   That as a further direct and proximate result of said unlawful employment practices, Jones has suffered depression, extreme mental anguish, outrage, severe anxiety, shameful embarrassment among her friends, colleagues and coworkers, damage to her reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of life.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court to provide the following equitable and legal remedies:

a.   Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.
b.   Order a permanent injunction prohibiting Defendant from further acts of sexual harassment and discrimination.
c.   Award Plaintiff costs of litigation, including reasonable attorney's fees and expert fees and expenses.

d. Award Plaintiff a judgment against Defendant for reinstatement, front pay, back pay and other compensatory damages.

e. Award Plaintiff prejudgment interest.

f. Grant judgment against Defendant for punitive damages as permitted by law, for willful and wanton conduct.

g. Enter an order requiring Defendant to implement effective steps to eliminate sexual harassment and discrimination from Defendant's workplace.

h. Grant such other and further relief as this Court deems just and proper.

## Count IV

### Illinois Gender Violence Act against Both Defendants

198. That Jones incorporates the preceding and subsequent paragraphs by reference herein.

199. That while acting within the scope of his employment, Redmond subjected Jones to acts of violence and physical aggression satisfying the elements of battery under the law of Illinois.

200. That Redmond intended to engage in offensive and physical contacts with Jones' body.

201. That the acts of gender violence committed by Redmond against Jones were committed, at least in part, on the basis of Jones' sex, female.

202. That Defendants encouraged and/or assisted in the acts of gender -related violence when they did nothing to prevent or correct Redmond's harassment, intimidation, and intentional humiliation.

203. That on nearly a daily basis throughout Jones' employment Redmond sought opportunities to physically touch Jones in an unwelcome and offensive manner.

204. Each of the aforementioned actions by Redmond were intentional and resulted in conduct that was unwelcome and offensive to Jones.

205. Defendants ratified Redmond's conduct by failing to address or correct Redmond's tortious conduct despite Triad's knowledge of such conduct.

206. Defendants' failure to address or correct Redmond's tortious conduct despite their knowledge is equivalent to encouragement or assistance.

207. As a direct and proximate result of Redmond's and Triad's conduct, Jones suffered and continues to suffer from depressive mood, increased stress, anxiety, mental anguish, humiliation, and embarrassment.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court to provide the following equitable and legal remedies:

a. Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b. Order a permanent injunction prohibiting Defendants from further acts of sexual harassment and discrimination.

c. Award Plaintiff costs of litigation, including reasonable attorney's fees and expert fees and expenses.

d. Award Plaintiff a judgment against Defendants for reinstatement, front pay, back pay and other compensatory damages.

e. Award Plaintiff prejudgment interest.

f. Grant judgment against Defendants for punitive damages as permitted by law, for willful and wanton conduct.

g. Enter an order requiring Defendants to implement effective steps to eliminate sexual harassment and discrimination from Defendants' workplace.

h. Grant such other and further relief as this Court deems just and proper.

## **Count V**
### **Assault and Battery under Illinois Common Law against Both Defendants**

208. Jones incorporates the preceding and subsequent paragraphs by reference herein.

209. That while acting within the scope of his employment, Redmond repeatedly subjected Jones to assault in November and December of 2019.

210. That Redmond intended to engage in offensive and harmful contacts with Jones' body.

211. That Redmond's conduct in touching, hugging, and attempting to touch Jones placed her in apprehension of imminent physical contacts.

212. That Jones is entitled to be free from willful and wanton conduct.

213. As a direct and proximate result of Redmond and Triad's conduct, Jones suffered and continues to suffer from depressive mood, increased stress, anxiety, mental anguish, humiliation, and embarrassment.

214. That Redmond's conduct in subjecting Jones to unwanted and unlawful physical contact was in violation of the law.

215. That Defendant Triad had notice of the assaults and batteries that Redmond was inflicting on Jones.

216. That Triad failed to exercise reasonable care in the hiring, retention and supervision of its employees, resulting in Jones being subjected to assault as a result of Redmond's behavior and conduct.

217. That Defendant Triad could have prevented the repeated assaults and batteries suffered by Jones by taking reasonable care in hiring, supervising, disciplining, or even by firing Redmond.

218. That the aforementioned action by Redmond was intentional and resulted in behavior that was unwelcome and offensive to Jones.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to provide the following equitable and legal remedies:

a. Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b. Order a permanent injunction prohibiting Defendants from further acts of sexual harassment and discrimination.

c. Award Plaintiff costs of litigation, including reasonable attorney's fees and expert fees and expenses.

d. Award Plaintiff a judgment against Defendants for reinstatement, front pay, back pay and other compensatory damages.

e. Award Plaintiff prejudgment interest.

f. Grant judgment against Defendants for punitive damages as permitted by law, for willful and wanton conduct.

g. Enter an order requiring Defendants to implement effective steps to eliminate sexual harassment and discrimination from Defendants' workplace.

h. Grant such other and further relief as this Court deems just and proper.

## Count VI
## Intentional Infliction of Emotional Distress
## under Illinois Common Law against Both Defendants

219. Jones incorporates the preceding and subsequent paragraphs by reference herein.

220. That while acting within the scope of his employment, Redmond subjected Jones to sexual advances and sexual harassment during her employment.

221. That while acting within the scope of his employment, Redmond subjected Jones to physical assaults.

222. That Defendant Triad, through its employee Redmond, intentionally inflicted severe emotional distress and mental anguish on Jones.

223.   That Redmond acted willfully and intentionally in that he knew Jones would suffer, and did suffer, extreme emotional and physical distress as a result of Redmond's extreme, oppressive, and unreasonable conduct.

224.   That Redmond's conduct amounts to intentional infliction of emotional distress because said conduct was extreme, outrageous, and beyond the bounds of moral decency such that no reasonable person could be expected to endure it.

225.   That as a result of Defendant Triad's conduct, Jones suffered and continues to suffer from severe emotional distress.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court to provide the following equitable and legal remedies:

a.   Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b.   Order a permanent injunction prohibiting Defendants from further acts of sexual harassment and discrimination.

c.   Award Plaintiff costs of litigation, including reasonable attorney's fees and expert fees and expenses.

d.   Award Plaintiff a judgment against Defendants for reinstatement, front pay, back pay and other compensatory damages.

e.   Award Plaintiff prejudgment interest.

f.   Grant judgment against Defendants for punitive damages as permitted by law, for willful and wanton conduct.

g.   Enter an order requiring Defendants to implement effective steps to eliminate sexual harassment and discrimination from Defendants' workplace.

h.   Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,
Rejesta Jones

By: _____/s/Renee Fell_____

One of Her Attorneys

Uche O. Asonye-6209522
Renee Fell- 6312785
Asonye & Associates
100 N. LaSalle Street, Suite 2115
Chicago, IL 60602
(312)795-9110
uasonye@aa-law.com
Rfell@aa-law.com

## **JURY DEMAND**

NOW COMES Plaintiff, Rejesta Jones, by and through her undersigned attorneys, and

hereby demands a trial by jury in the above-entitled causes of action.

Respectfully submitted,
Rejesta Jones,

By: __/s/ Renee Fell____
Attorney for Plaintiff

Uche O. Asonye – 6209522
Renee Fell- 6312785
Asonye & Associates
100 N. LaSalle Street, Suite 2115
Chicago, Illinois 60602
(312) 795-9110
uasonye@aa-law.com
Rfell@aa-law.com